Saji Vettil, appearing on behalf of Miguel Torralba. Mr. Torralba has already completed his sentence and he's already home on a house arrest status, so the court has some idea of what happened. Ultimately, whatever decision this court will make, the effect it would have on him is whether he will be branded as a felon for the rest of his life or whether he would get a new trial where he can clear his name. That's what it's going to come down to at the end. Judge, we have miles and miles to go until we reach the dissent in the Gadsden case. However, the distinction is, and the court in the majority of the Gadsden case has clearly pointed out, the distinction between lay witness versus the expert witness is a fine one and district courts are struggling. Defense attorneys are struggling to find out what is that fine line when it comes to freemen. In all fairness, courts have to be so vigilant in pointing out and performing their gatekeeping duties in this case or apply the proper test. It will be so fused together, it will be confusing to the jury, and they cannot make a decision at the end. What wait? Counsel, it strikes me that this is inherently one of those issues that is very fact intensive that we have to give a fair amount of leeway to the trial judge in making the determination as to whether this testimony will aid a lay jury in understanding parts of the case. And as I read the record, it appeared to me that there was a legitimate reason to have testimony with regard to the use of coded words and that sort of thing. And I guess doesn't the appeal really turn on whether or not the agent, when testifying as an expert, stepped over the line and became a lay fact witness? Precisely, Judge. That's where I was going next. If you look at the guernman's own brief on page 38, where the guernman, when the judge was deciding whether to admit expert testimony, she said, which I know what she said was, and the guernman has decided to use him separate from a fact witness, which I know some of the Ninth Circuit cases discourage the use of the case agent as the guernman in this case. That is what the predicate she used in reaching and allowing expert to come in, because she was left with the impression that there will not be an expert testifying as a lay witness. Subsequently, she corrects the record in page 50, and in the exit of records, it is included in that, and she does correct that. What? Counsel, may I ask you, which witness are you discussing? Are you discussing Agent Frazier? I am talking about – that's correct, Judge. I mean, I have doubts whether or not Agent Frazier would even have been qualified as an expert in this matter. He was on the job for one week. How will one week – and this was his first case. He was a border patrol agent, then subsequently became an investigator, and was an investigator of – He was on the job one week as a special agent as opposed to a patrol agent. That's correct, Judge. But it's an alien smuggling case. Isn't that what border patrol agents interdict? Border patrol agents' job is just to drive around in southern Arizona and also stand by the checkpoint. It is much more – as a special agent, his job involves having to monitor the wire room. They have to monitor other agents. They have to monitor the phone calls, surveillance. But I guess what I'm exploring with you here is, are you challenging his competency? No, I'm not, Judge. Based on that experience? I just was prefacing it. We are – the issue in this case really does turn on what you pointed out, whether or not it is a 701, 703 statements came in. What is what? I mean, almost remind me of Dante's Inferno, where Dante was traveling down, two lizards came together and it fused together. We don't know the distinction between – I have a question for you. Sure. It seems to me that all testimony, if relevant, is admissible. If testimony is not predicated on firsthand knowledge, but it helps the jury, then the jury should be instructed under 702 to consider that testimony, not based on firsthand knowledge, pursuant to the rule, correct? Yes. Okay. If we agree on that, then it seems to me that your major issue here is that the trial judge did not give an instruction under 702. I mean, expert and lay are just labels, but the fact of the matter is she did not instruct on 702. And then the question is, let's assume that's plain error. Did it make the trial unfair such that we have to reverse? Correct? That's correct, Judge. Okay. That is absolutely correct because she should have given an instruction in this case. Well, then I'm interested in knowing why the plain error was so horrendous or awful that it should merit reversal. Absolutely, Judge. Agent Fraser was the main witness in this case. He was called and recalled over and over again as a witness in this case. He was testifying, and if the Court were to look at Gernman's trial memorandum, page 257, that would be what I would be referring to. They said he would testify about interpretation of terminology and coded language. That is what he came in for. Subsequently, every time a phone call was being played, they would stop the phone call and then he would go into this whole litany of information, what he understood, and then he would tailor it in such a way that would support the Gernman's case. And that was going on over and over and over again, almost became a second advocate in that court, and the jury was left with he was an expert who was testifying, and without a proper instruction. And, Judge Tolman, you actually wrote the opinion on the Anterim case, probably one of the best cases where you. I remember that. You like that case. I like that case. Okay. I mean, it doesn't, I mean, defense didn't prevail in the case. However, that case gives you a good idea how it should have been done, how it should have been, the demarcation of the lines should have been. Can you help me with a factual question? As I read the record, Judge Jorgensen at one point discussed giving the instruction. The government had proffered some language, but you objected to the language of the government's instruction. And then as I read the transcript, the district court was distracted by the prosecutor and so there was never any return to the subject. But you didn't submit any counterproposal, did you? The trial counsel did not. I was not the trial counsel. I was the trial counsel. You are absolutely correct about what you said. And that was one of my biggest concerns when I was reading the record. Sure. Very similar to what the Fourth Circuit in Garcia has pointed out. Every time an objection, Guernman would move it to the next question or its next area of interest. So they will slide along a slippery slope path and the judge will lose track of the instruction. And at the end, Guernman at the very last day showed up with an instruction in this case, which was even correctly the court pointed out, it's going to put the defense in a much worse position and that should not have been the instruction. But I guess my concern is defense counsel was invited by the trial court to propose something if he didn't like the language that the prosecutor had offered, but there was neither a proffered instruction nor an objection made for the failure to give. So I guess we are on plain error review then, are we not? Well, Judge, I think she raised the issue. I'd like to reserve a minute just to answer your question. I'll give you a minute. Go ahead and answer, Judge. I'll give you a little extra time. What happened in this case was, Judge, they keep putting it off about when they should give the instruction and the Guernman keep telling, I have more authority, I'll bring you more authority down the road, which they did. They never did. They could finally, the judge caught up to them and said, look, you don't have not given me any authority where your agents can continue to do this. And then Judge invited them to give an instruction and the defense counsel said, okay, I'll think about it, and she never did. I don't know whether she missed, whether. But, I mean, it's either she missed or she made a tactical decision not to ask for an instruction? I don't think it was a tactical decision in this case, Judge. I'm almost tempted to say this trial, this trial counsel was trying her best with the way the evidence was being presented, and she was a bit challenged, I could tell from reading the record. I'm not here to, she did the best she could with what she had at the time. But on the other hand, the evidence against Mr. Toralba was very slim and old. Well, there's some pretty incriminating. Phone calls. Yeah. Particularly when he's talking about whether or not the Interior Border Patrol checkpoints are open or not, and he's saying, okay, the coast is clear because the check station is open. That alone is a very good indication, Judge. People who live in southern Arizona very well know those checkpoints are up and down. Either we make it to dinner on time. But viewing the evidence in the light most favorable to the jury's verdict, that's pretty inculpatory evidence that he's telling the other co-conspirators the coast is clear, you can sail through on the highway, you don't have to drop your load off and have them walk around the station in the desert and then pick them up on the other side. Isn't that what that was all about? He didn't. That's the explanation given. All he said was road is wide open. That's all he said. He didn't go any further than that. That's a coded message, is it not? Precisely. I mean, that's the government's theory. No, I agree. But that then government's agent gets to understand and give an explanation, you are going around. And that's precisely why. But why can't why is that an improper subject for an expert who is familiar with drug smuggling techniques? That's sort of in the toolbox of the coyotes. That's one of the things they do. It is. I would agree with the Court. It could be a proper foundation and proper instruction. It could be. But there was no challenge to the competency of the agent to render that opinion, was there? There was no competency in terms of wardeering. There was really no wardeering. When you start on page 59 of when he was being, I'm referring to external records, where page 59, when he talks about his, he was starting out as a lay witness who was simply going to decode some terminology. That's all he said. There was no objection raised by counsel to his lack of competency. No, she did not. What she did was she assumed all he was going to say was some coded words being decoded. Instead, he turned around and started giving explanation about the phone calls in this whole case. Well, I mean, if the statement is simply the coast is clear, is he not permitted to interpret for the jury what the meaning of that coded message is? I believe this Court has taken a case called Dijovsky, which is from another district. And in that particular case, I may have butchered the name of that case. I apologize. But that particular case, the Court, then they would be taking the proxy. It's a plain language. It's so clear. Then they should not have allowed the agent to testify at all, give an explanation. But the government's theory is that it's not, it's coded. I mean, it's, yeah, you can look at the word and it says clear. But the question is, what does that mean? What's clear? The road is wide open is, I believe, is exactly the word I think he used. And there was no need for an explanation. And for that one, trial counsel did challenge, and there was a sidebar conference, and the Court did. I think we have your position in mind. Let's hear from the government. Okay. I'll give you a little time on rebuttal. Thank you. Good morning. May it please the Court. My name is Bruce Ferg, Assistant United States Attorney on behalf of the government. There are a couple of things that Saji has said that factually I would have to disagree with or clarify. First of all, the question was about ---- I'm sorry to interrupt, Mr. Ferg. But I think we're better focused on the legal issues here. Okay. And I don't want to cut you off in terms of your interpretation of the facts if it's relevant for the answer to the question. It seems to me that when judges preside over trials and witnesses testify, they have to be very careful, and the Ninth Circuit has said they have to be very careful, about the distinction between lay testimony based on firsthand knowledge versus testimony from an individual with specialized knowledge, no firsthand knowledge of the facts, and the ability to help the jury. Clearly, you with a lot of experience, the judge with a lot of experience, would have seen this distinction in Agent Frazier's testimony. Why wasn't a simple instruction given, wasn't it plain error not to talk about this very obvious and evident distinction? Well, Your Honor, actually, Freeman says that the difference between lay testimony and expert opinion testimony in these circumstances is not all that clear. And so when we're trying to judge is the agent working strictly from his experience, but the Ninth Circuit cases have said that that kind of examination can also include what he learns in the course of a particular investigation, as is particularly what happened here. The difference is not all that clear, and that's why it's appropriate to put the burden on the defendant if he thinks that there's a problem to ask for an appropriate instruction. Well, but that's the judge's responsibility. Even if, under plain error, even if nobody requests the instruction, the judge should have known to give the instruction. So I'm not sure I'm persuaded by your argument that it was incumbent upon the defendant to request the instruction. Well, I think this is where this case that you, your order requested in comparison to Vera, Vera was a situation where the district court specifically said, I'm going to give this kind of, I suppose you could call it a Freeman instruction, distinguishing between these two kinds of testimony so that it's easy for the jury to follow. Here, when the issue arose, the district court, first of all, was talking, particularly in the context of Agent Barola initially, who clearly was an expert about the distinction between the two kinds. But after the lady who was representing the defendant at trial finally got around, after about two days' worth of testimony, to say, wait a minute, I think Frazier may be lapsing from lay testimony based simply on his involvement in the investigation into expert, that's when the judge said, okay, well, to make this clear, if you are concerned about that, give me an instruction. And the government was not opposed. In fact, it suggested that it would try and obtain one that it was familiar with, which apparently was later offered. Robertson, forgive me, did the United States offer a 702 sort of instruction in its proposed charge? I don't think in the original set of instructions. I tried to find whatever this was, this one was, that was then discussed and kind of discarded right before the jury was actually instructed. And I could, frankly, I could not find it. So I'm not sure exactly what the terminology was. It never got marked as a court exhibit, even though the defense objected to it. We don't know what they were objecting to. Like I said, I could not find it. So all that I know is the suggestion that was made that somehow it gave undue weight to what the expert testimony was. But I think it's very important to recognize that at no point was Frazier ever defined for the jury as an expert. He was never called that. And as a matter of fact, the government insisted that the huge bulk of what he was doing was actually simply lay opinion testimony, which was appropriate. So we don't have this situation where there's a question about, oh, should I treat him as an expert or should I treat him as simply a lay witness, because he was never exalted or raised to that special level of credibility that comes with a title of expert. Well, since opposing counsel likes our decision in Antrim, didn't we say that one of the things that helps is to have sort of a break in the presentation, whether it's done with a sidebar or with a leading question that makes it clear to the jury that we're now shifting from expert to lay testimony? And did that happen here? That was done in Antrim. That's an appropriate way to do it. But was it done in this case? That's the question. No. And, again, Freeman was very clear that there are a variety of ways that this distinction can be made when it's necessary to be made. And I think it's also important to look at exactly what is being alleged here, because Freeman, Kevin Freeman, sets out this list that was borrowed from the Second Circuit of potential sources of prejudice, things that could go wrong with this kind of dual-role testimony. But the bottom line is, if you read the opening brief, there is no specific allegation, unlike the oral remarks you're hearing now, that anything that actually violated Kevin Freeman was done in this case. There was no simple regurgitation of the government's case, as the Fourth Circuit talked about. There is no proof, no suggestion even, that he was simply recycling hearsay from confidential informants, which is one of the things that happened in Vera and some of the other cases that are being relied on. So is your position, then, that even though the judge didn't give an instruction and even though Vera says that one must be given when an agent testifies as an expert and a lay witness, that there was no error, or are you acknowledging an error under Vera and saying that, nevertheless, it was harmless? Well, I'm kind of betwixt and between. Basically, I'm arguing that because the defense was specifically invited to present an instruction on this issue, which, in fact, reinforces Rule 30, saying you must submit an instruction if you want one given, that the defendant was on notice that this was a law. It was discussed in the pretrial memorandum and their objections and everything else. They knew about Freeman. They knew about the distinction. And yet even being specifically invited never offered what they thought was appropriate instruction or even attempted to tweak the one that the government had proposed. But Vera says that the burden is on both the defense and the United States to ensure that a jury knows how to evaluate case agent testimony. So the government didn't offer, to our knowledge, the defense may have done so ineffectively, and the court didn't give an instruction. So it seems like the error was made, it was plain, and we need to look at whether it was harmless or not. Certainly, the harmless error is one way to look at it if you don't agree with the full waiver. Well, let's assume for the sake of Judge Murphy's question, we'll make it a hypothetical. There was error. Now, what should we look to in determining whether it was harmless beyond a reasonable doubt? Well, first of all, again, what was the actual error other than the instruction? Because the impact of it, what did that mean? I liken this to a 404B situation where I think the law is similar, that the court should give a contemporaneous instruction cautioning the jury as to what use they may make of the other crimes or bad acts evidence. And for failure to give that instruction, I think our case law says that's also error. So let's assume there was error here. What can you point us to in the record from which we can make the harmless error analysis? In other words, what evidence is there other than Agent Frazier's testimony that supports the conviction? Well, there's a huge amount that's supporting the conviction. And even in Vera, they said it's only with the specific problem of the lack of foundation for the drug quantity testimony that even the sentence was set aside. So since there's a huge amount of evidence, why don't you point us to the two or three items that point to his guilt separate and apart from Agent Frazier's testimony? Okay. Let me get my notes here. Basically, the entire statement of the facts goes to that. But in addition, if you look specifically, what was he up to, the defendant? He had twice vehicles seized with aliens in them. He was continually receiving hundreds or even thousands of dollars when the supposed price for a shuttle trip to Phoenix was $30. He was doing heat runs. He was doing evasive driving. On one occasion, it was specifically testified about. And then because his testimony about that differed from what he testified in the first trial, he was caught in inconsistencies trying to explain that. He was, as mentioned, constantly talking to this fellow who was kind of the dispatcher at the Wero Shuttle, talking about what? Oh, not really passing the time of day. Yes, the checkpoint is open, but, oh, now we have a free road to do a lot of business. It's not just can I get home for dinner. He was talking about the license plates that the government vehicles had on occasion. He specifically looked at Agent Peach's vehicle the night when the pole cam was down, and as soon as he saw an unrecognized vehicle in the area, he reported that to the other people. So we have him basically doing everything. He had loads where a bus load or a large shuttle load would come into GS and it would be split up between himself and one of the other drivers, such as Matt Aperos. And they couldn't follow all of these drivers. On that particular occasion, they followed Matt Aperos, and guess what? He's got illegal aliens who came out of the same group. Is your argument, Mr. Ferg, that if you consider all that testimony and exclude Agent Frazier's improper testimony of an expert nature that was in fact disguised lay testimony, that there was still sufficient evidence to permit the jury to find him guilty? That's what I would like to have identified, and the defendant has never done it. What exactly was improper about the testimony? Well, I think if I understood opposing counsel's argument, one of his concerns is that with regard to the road is open, the agent then talked about, well, what that means is that, you know, the smugglers frequently determine whether the checkpoint station is being manned and operating, and if it is operating, then they drop their load off before the driver goes through with an empty van and then the aliens have to walk around through the desert, the back of the station, and then he picks them up on the other side, and then they proceed. You know, and he's using that one phrase in the cell phone conversation to then launch into this. He didn't. Excuse me. All of that testimony about the general practices was from expert Agent Varola. Varola. And all, if you ask me. And that was not objected to. No. Not after the initial motion in limine as far as the qualifications and so forth. There was not a single objection to Varola's testimony. And so I would have to – I'm sorry, I can't remember the exact pages, but I went through the exact details in my brief of this objection and what was actually said, and the district court said, okay, limit what you're asking of Frazier to in general. Don't pin it on Taralba individually, and he observed that at all times. He talked about the roles of other people. He never specifically pointed a finger at Taralba. And so what we have is appropriate testimony by Agent Varola about the general practices. All that in that particular instance Frazier said was not even specifically about Taralba, but simply, oh, yes, this is what these operatives do is they watch to see if the checkpoint is open or closed. Okay. I've let you go on over about the same amount of time as I did your opponent, and I think we have your argument in mind. Thank you. Thank you, Mr. Ferg. Counsel, I'll give you a couple minutes on rebuttal. Judge, earlier I think the government just told the court about all that testimony came from Agent Varola. That's not correct at all. The record speaks for itself very clearly. I mean, we can read the testimony. Exactly. That's what I was saying. I mean, the record speaks for itself. I think we can sort that issue out ourselves. Okay. Yeah, the court can, and also they talked about hundreds of thousands of dollars being coming back. Again, that came out of Agent Varola's testimony. He said, I painstakingly sat there and counted the amount of money that he got. That's his testimony. Go ahead. But you weren't objecting to Agent Varola's testimony, were you? No. There was a motion filed to keep him out. However, I am not. I am narrowing it down to the one issue the court wants me to address, the Vera case on failure to give a proper instruction where there should have been a demarcation between the two cases, I mean, the two types of testimony provided by Agent Frazier. But the problem in Vera was that it went to the drug quantities that then drove the sentence that ultimately was imposed on Vera. What's your response to Mr. Ferg's recitation of all of the other incriminating evidence that stands apart from the challenged testimony of Agent Frazier? The other testimony really will not stand up without Agent Frazier's testimony, Judge, without his explanation. Didn't counsel, actually, didn't your client concede on cross-examination that there was an alien smuggling conspiracy here? The only question the jury had to decide was whether he joined the conspiracy. Yes, he did.  And our case law says only a slight connection need be shown. Absolutely. That's correct. However, he was the response to the laundry list of evidence. Laundry list of evidence as to what the government just set up. And one of the things they point out is my client testified. Once the avalanche of testimony came in from Agent Frazier, he was forced to testify in the hope that he can clarify. At trial, that's a decision he had to make. And the testimony can be considered by the jury in deciding whether or not he joined the conspiracy. Absolutely. But when a defendant is being in a trial setting, he had a choice of not testifying. And in this case, once Agent Frazier's improper testimony came in, he had to testify and try to clarify some of the items happened. I don't think I can. You're asking us to extend VERA almost on approximate cause theory that but for the improper crossing of the line by the case agent between expert and lay witness, the defendant would not have testified. But since the defendant did testify, he incriminated himself by the way he handled himself on cross-examination. And the jury can't consider the fruits, if you will. Is that the argument? In a way, I'm taking it up to the next level of fruit of the, yes. Yeah, the fruit of the poisonous tree. Yes, I am almost taking it to the fruit of the poisonous tree in this case. I did say that. It's a novel theory. No, it is. I mean, in all fairness, I mean, that's where I took it. But on the other hand, the Court in this case had a government says, keep on saying defense failed to request an instance. But Daubert, Kumho-Tyers or VERA or Freeman does not put the burden on the defendant. It's on the proponent of the evidence, that is the government. It is on them to make sure they lay the proper foundation. They have done what they're required to do to make sure their evidence stand up. But the foundation here was whether or not there existed an alien smuggling conspiracy. And it's pretty hard to say on this record that there was no alien smuggling conspiracy. There could be a, there could be a. But if you take out Agent Frazier's testimony, it would be, it would become harder because if you look at the rest of the people also who testified. Agent Barola's testimony with regard to common attributes of alien smuggling enterprises, and then you'd have all of the other evidence that Mr. Ferg identified that looks pretty suspicious to. Such as Agent Moreno, Agent Fuss and Agent Lugo. Lugo was identified also as an expert. Again, the same thing happened with Agent Lugo, happened with Agent Frazier. But there was no objection to Agent Lugo, was there? I believe Lugo, there was an objection, Judge. There was an objection on Lugo also. Counsel, I've let you go way over. Okay, I apologize. I'm not. No, you've been very helpful. And I appreciate your both arguments. Okay. I think it's enlightened the issue. Thank you. Thank you. All right. The case just argued is submitted. We'll get you a decision as soon as we can.
judges: Murphy, Tallman, Rawlinson